UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAY COLE, SR[1],

        Plaintiff,

-v-                           CASE NO. 2:06-CV-543-FTM-DNF

MICHAEL J. ASTRUE[2],
Commissioner of Social Security,

        Defendant.

_____/

OPINION AND ORDER[3]

      This matter is before the Court on the plaintiff's complaint (Doc. #1), seeking

review of the final decision of the Commissioner of Social Security of the Social

Security Administration ("the Commissioner") denying her claim for Supplemental

---

[1]      Ray Cole, Sr., was substituted for Filomena Cole by an order dated December 20, 2006. Filomena Cole passed away due to myocardial infarction. All references to the Plaintiff, will be in the female form because the record refers to Filomena Cole.

[2]      Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[3]      Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated May 11, 2007. (Doc.# 22).

Security Income (SSI)[4]. The Plaintiff timely pursued and exhausted her administrative remedies making this claim ripe for judicial review pursuant to 42 U.S.C. § 405(g). The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

I.    **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW**

The plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether the plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On or about September 10, 2003, the plaintiff filed an application for Supplemental Security Income, asserting a disability onset date of January 1, 2003. [Tr. 63]. The plaintiff's application was denied initially and upon reconsideration (Tr. 35, 40). The

---

[4]    Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. Patterson v. Bowen, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); McCruter v. Bowen, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

plaintiff filed a request for a hearing on August 20, 2004.  Administrative Law Judge ["ALJ"] Ann S. Azdell held that hearing by video conferencing from Tampa, with the Plaintiff in Fort Myers, Florida, on December 14, 2005. [Tr. 484-506].  On May 16, 2006, ALJ Azdell issued a decision denying benefits. [Tr. 9-19].  The Plaintiff filed a request for Review of the Hearing Decision on July 5, 2006  (with an accompanying letter brief to the Appeals Council dated July 24, 2006).[5]   The Appeals Council denied the Plaintiff's request for review on September 7, 2006, making the ALJ's decision the final decision of the Commissioner.  20 C.F.R. §§ 416.1400(a)(5); 422.210(a). [Tr. 4-6].

At Step 1 the ALJ found the plaintiff had not engaged in substantial gainful activity since September 10, 2003, the protective filing date of her application for supplemental security income.  20 C.F.R. 416.974. [Tr. 13].   At Step 2 the ALJ found the plaintiff suffered from severe impairment(s) or a combination of impairments: affective disorder/organic mental disorder; history of lumbar strain; alcoholism, continuing; exogenous obesity; chronic obstructive pulmonary disease secondary to heavy smoking; non-insulin dependent diabetes mellitus, type II; and recent cataract surgery, right eye. [(Tr. 13).  20 C.F.R. § 404.1520(c).  At Step 3 the ALJ found  the plaintiff did not have an impairment or combination of  impairments which strictly meet or  medically equal the criteria of any listed impairments shown in 20 C..F.R. 404,  Subpart P,  Appendix 1  (Tr. 14).  At Step 4 the ALJ determined the plaintiff had the residual functional capacity to

---

[5]       Counsel's letter brief was submitted to the Appeals Council on July 25, 2006, but did not appear in the certified administrative record.  The Plaintiff is unclear whether it was considered by the Commissioner and attached it to Plaintiff's memorandum of law..

perform simple repetitive tasks requiring basic literacy; push/pull, lift and carry 20 pounds occasionally, 10 pounds frequently; and sit, stand and/or walk for six of eight hours during a typical eight-hour workday. [Tr. 14].  The ALJ relied on the Medical Vocational Guidelines ("GRIDS") and Vocational Expert, Jeffrey Carlisle, to assist him in determining the various positions the plaintiff would be able to perform. [Tr. 18].  The ALJ found the Plaintiff to be a "younger individual".  20 C.F.R. § 416.963.  Accordingly, the ALJ found the Plaintiff not disabled at step five of the sequential evaluation.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to

the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

## II.  Review of Facts and Conclusions of Law

**A.     Background Facts:**

The plaintiff was born on April 19, 1959 and was forty-seven  years old at the

time of the ALJ's decision. (Tr. 19, 63).  The plaintiff has a high school education which

she completed by attending  special education classes. (Tr. 13, 490).   The plaintiff

worked at a (dry) cleaners for an extended period of time from 1977 to 1981. (Tr. 13, 82).

The plaintiff also worked at two fast food restaurants for a short period of time.  (Tr. 13).

The ALJ determined that this work did not qualify as past relevant work[6]. (Tr. 13).

On the disability report, (completed with her application for disability benefits),

the plaintiff alleged that she had back pain, asthma, panic attacks, leg pain, diabetes and

high blood pressure, all impairments which limited her ability to work.  (Tr. 97, 107).   It

should be noted that the plaintiff  had her spouse write on the application that he was

completing it for her because she was unable to read.  (Tr. 104).

---

[6]      The Regulations indicate that past relevant work must have been
work completed in the past 15 years or work which lasted long
enough for one to learn how to do it.  20 C.F.R. §§ 416.960(b)(1).
The plaintiff worked at Columbus Cleaners more than 15 years ago
and her work in the restaurants was not long enough for her to
learn how to do it.  (Tr. 82).  The Plaintiff does not have any past
relevant work.

The plaintiff was evaluated by Dr. Joseph White, a clinical psychologist on October 24, 2002, upon referral by the Office of Disability Determinations to determine her current mental status.  The plaintiff related that she had been in a car accident at age 10 and had injured her lower back; that she was diagnosed with asthma at age 31; and with diabetes and high blood pressure at age 37.  The plaintiff denied the use of drugs or alcohol abuse.  The plaintiff advised that her first panic attack was at age 34 and she has been treated for anxiety and depression ever since. [Tr. 198].  The plaintiff's medications consist of Glucophage, Glucotroll, Xanax, Tylenol and Monopril.  The plaintiff related she last worked in 1999 and had worked as a dishwasher.  Dr. White found the plaintiff to be appropriately dressed with good personal hygiene.  Her speech was normal and her thoughts were "clear and coherent".  Although the plaintiff appeared nervous, she was open and cooperative.

Dr. White found that the plaintiff's IQ was "borderline to low average range".  The plaintiff was oriented to time and place but "showed poor attention, concentration and inadequate short term memory".  DSM IV DIAGNOSIS: "[A]xis 1: Panic Disorder Without Agoraphobia; Adjustment Disorder with Depressed Mood; Axis 2: No Diagnosis; Axis III: Diabetes, Asthma, High Blood Pressure, Chronic Pain in Lower Back, Legs and Chest".  The plaintiff's daily activities appears to be limited to housework and child care.  The plaintiff does not socialize, cannot drive, cook or manage her own funds.  "Her current level of depression and panic attacks is considered to be a barrier to her overall functioning". [Tr. 199, 200].

On November 6, 2002, a Psychiatric Review Technique Form (PRTF) was completed by Michael R. Stevens, Psychologist and state agency reviewer.  The plaintiff's impairments were not found to be "severe" based on criteria set forth under Listing 12.04 and 12/06. [Tr. 201].  The plaintiff's function limitation was considered mild with regards to "maintaining social functioning, maintaining concentration, persistence or pace; with no episodes of decompensation. [Tr. 201, 211].

On October 11, 2003, the plaintiff was admitted to the Crisis Stabilization Unit at the Ruth Cooper Center for a psychiatric evaluation.  The plaintiff related to the attending physician that she was "drinking and I got depressed".   The plaintiff was diagnosed with adjustment disorder with depressed mood.  The plaintiff was released with a prescription for  Zoloft medication for her depression and  Trazodone for her insomnia.  The plaintiff was given a referral to Alcoholics Anonymous meetings and an appointment to meet with a psychiatrist at Ruth Cooper Center.  The plaintiff was to call 911 or the crisis line if she felt suicidal or had homicidal thoughts. [Tr. 244 - 249].

On January 9, 2004, the plaintiff was evaluated  by Gail A. Vincent, Ph.D., a Licensed Psychologist., upon referral.  A General Clinical Evaluation with Mental Status Examination; a General Intellectual Evaluation and the Wechsler Adult Intelligence Scale -Third Edition (WAIS-III) was requested by the Office of Disability Determinations. [Tr. 276].  The Mental Status Examination revealed the plaintiff was cooperative and she did not appear to show hostility or to purposely withhold information. [Tr. 278].   The plaintiff was oriented x3 with no indications of hallucinations, illusions or delusion.  The plaintiff's mood appeared anxious with depressive features. The plaintiff had clear speech

7

and her fluency and productivity were commensurate with her intellectual level.   The

Plaintiff scored 1 2/3 standard deviations below the mean (5th percentile)  which indicated

problems in attention, concentration and immediate auditory memory.  Her judgment and

insight appeared poor. [Tr. 279].

Based on the WAIS-III Test, the plaintiff had a verbal IQ score of 64, a

Performance IQ score of 67, and a Full Scale IQ score of 62, which placed her abilities

within the Mild Mental Retardation range of intellectual functioning.  Dr. Vincent felt the

plaintiff would benefit greatly from psychiatric evaluation and treatment, including

behavioral counseling which could possibly assist in alleviating her symptoms of anxiety

and disassociative symptoms.  Dr. Vincent determined that the plaintiff would benefit

from assistance in handling her own funds. [Tr. 279-280].

A mental Residual Functional Capacity Assessment was completed by Arthur H.

Hamlin, Psy.D, a clinical psychologist and state agency reviewer dated February 4, 2004.

Dr. Hamlin found the plaintiff's mental status showed reduced memory functioning.

'[H]owever, evidence still suggests that Cl. Retains the capability or recalling work-like

procedures and very simple instructions".   He determined the plaintiff would be able to

adapt to routine work but that her criteria limitations would be limited by her physical

factors.  Finally, "[C]l. Is able to meet the mental demands of concentrated, task-oriented

activities. [Tr. 286].

The Plaintiff was seen on June 17, 2004 by Chris J. Carr, Ph.D, a licensed

psychologist for an Adult Mental Health Evaluation.  Dr. Carr did not find the

information the plaintiff provided regarding her "history" to be reliable. [Tr. 345].   Dr.

8

Carr did determine that the plaintiff had been evaluated on an out-patient basis, and had been treated or hospitalized for mental disorders.  Dr. Carr reported the plaintiff denied alcohol and substance abuse.  Dr. Carr suspected the Plaintiff might be abusing alcohol and Xanax , but felt more information was needed . [Tr. 346, 347 ].   He found her thought processes to be logical and organized.  The plaintiff appeared anxious but was oriented in terms of person, place, date and situation.  He found her intelligence to be in the lower average range.  PROGNOSIS, and recommendations for treatment: Claimant can manage her own benefits.  Prognosis is uncertain. [Tr. 348].

On June 25, 2004, a Mental Residual Functional Capacity Assessment form was completed by Martha V. Putney, Ph.D., licensed psychologist and a state agency examiner.  Dr. Putney determined: A. [C]l seems able to understand and remember simple procedures and instructions.  B.  Cl seems able to perform simple mental tasks and to make simple work decisions.  C.  Cl seems able to be cooperative and socially appropriate with intermittent moderate reduction in interpersonal skills. D.  Cl seems able to respond/adapt moderately well to a simple work setting.  Overall, Cl appears to have moderate (down symbol) in B criteria function associated with 12.02, 12.06, 12.08 and 12.09 but seems capable of performing simple, repetitive mental tasks on a routine basis". [Tr. 365].

On August 28, 2004, the plaintiff was admitted to the Crisis Stabilization Unit at the Ruth Cooper Center under the Baker Act because she cut herself with a knife while under the influence of alcohol.   Mental Status Examination: "This is a 46-year-old Hispanic female appearing somewhat older than her chronological age.  She was found to

be alert and was oriented x4.  The plaintiff was walking with a normal gait.  The plaintiff

denied feeling depressed or suicidal.  The plaintiff denied the seriousness of her drinking

problem and obviously in denial of her alcohol abuse".  "She seems to have poor

judgment".  "However, she does not meet the Baker Act criteria at this time and she is not

a threat to herself or others".  The plaintiff's GAF score was 50. [Tr. 250].

At the hearing, the plaintiff revealed she was illiterate and doesn't work due to her

panic attacks and agoraphobia. [Tr. 490, 492].  The plaintiff stated her physical

complaints were leg pain, diabetes and breathing problems. [Tr. 493-494; 498; 499].

The plaintiff testified that she was an early riser since she could sleep at night.  The

plaintiff did limited household chores and sometimes napped in the afternoon.  The

plaintiff did not drive and only went out of her house 1 -3 times a month.  The plaintiff

testified to depression with some suicidal thoughts. The Plaintiff has no social activities,

she watches television and is not able to babysit her grandchildren. [Tr. 487].

**B.    Specific Issues:**

**(1)    THE ALJ ERRED BY FAILING TO FIND THAT THE
        PLAINTIFF HAD A CONDITION OR CONDITIONS
        WHICH MET OR EQUALED THE CRITERIA OF
        LISTINGS, MORE SPECIFICALLY, LISTING
        12.05(C)[7]**

In the decision, the ALJ determined that the plaintiff's impairments or

combination of impairments did not meet or medically equal the criteria of any of the

Listed impairments. [Tr. 14].  The plaintiff argues that with a Full Scale IQ score of 62

---

[7]    Listing 12.05 (C)  Refers to a significantly sub-average general
       intellectual functioning with deficits in adaptive functioning.

and with her significant physical and psychological limitations (affective disorder/organic

mental disorder, history of lumbar strain; alcoholism, continuing; exogenous obesity;

chronic obstructive pulmonary disease secondary to heavy smoking; non-insulin

dependent diabetes mellitus, type II; and, recent history of right eye cataract surgery (Tr.

13-14), that the ALJ should have shifted her focus to the analysis of whether the

Plaintiff's deficits in adaptive behavior manifested during the developmental period (i.e.

before the age of 22) for purposes of Listing 12.05(C).[8]  The plaintiff maintains that this

case should be remanded to the ALJ for a determination of whether there is substantial

evidence to rebut this presumption of a fairly constant mental capacity before the age of

twenty-two.  *Hodges v. Barnhart*, 276 F.3d 1265, 1267 (11th Cir. 2001).

The introductory material to the mental disorders section of the listing states that

to be found presumptively disabled under Listing 12.05, a claimant's impairment(s) must

satisfy both the diagnostic description in the introductory paragraph and any one of the

four sets of criteria set forth in listing 12.05.  20 C.F.R., pt. 404, subpt. P, app. 1. §§

12.00(a).  Subsection C of listing 12.05 requires "[a] valid verbal, performance, or full

scale IQ of 60 through 70."  20 C.F.R. pt. 404, subpt. P, app. 1, 12.05(C).  To satisfy

listing 12.05C, the plaintiff had to show that: (1) her impairments satisfied the diagnostic

found in the introductory paragraph of list 12.05; (2) she had a valid  IQ score of 60

---

[8]     There is a presumption that mental retardation is a condition that
       remains constant throughout life.  A claimant need not present
       evidence that she manifested deficits in adaptive functioning prior
       to the age of twenty-two, when she presented evidence of low IQ
       test results after the age of twenty-two.

through 70; and (3) "a physical or other mental impairment imposing an additional and significant work related limitation of function."  20 C.F.R. pt. 404, subp. P, app. 1§§ 12.00(a) and 12.05(c).   The Plaintiff argues that because the ALJ found the IQ score valid, the ALJ cannot consider her age, education and work experience.

The ALJ stated: "Although the claimant has a valid IQ score of 62, she has demonstrated significant adaptive functioning." [Tr. 14].  The ALJ indicated that the plaintiff's work history did not reflect a person who has deficits in adaptive functioning. The forms completed by the plaintiff for the SSA, show that she worked at Columbus Cleaners for 10 years. [Tr. 82].  The plaintiff has also worked at various restaurants. [Tr. 82].  The plaintiff testified that she stopped working at Ponderosa because her back was hurting and stopped working at Juicy Lucy's because it went out of business. [Tr. 491-92].  Therefore, the plaintiff did not stop working because of mental limitations.   The plaintiff's own work history reflects that she does not satisfy listing 12.05(C).

The ALJ considered the plaintiff's daily activities which are in contrast to one who satisfies Listing 12.05C  [Tr. 14].  The plaintiff  cares for her  personal needs[9], does cooking/meal preparation with assistance, performs some housecleaning. [Tr. 91-200]. The plaintiff watches television [Tr. 123-160] and plays cards. [Tr. 200].  The plaintiff only alleged the inability to do the housework, cooking and cleaning based on her physical pain. [Tr. 121, 128, 157-68]

---

[9]     Plaintiff stated that she has pain when caring for her personal needs, but did not indicate that she needed any assistance.

The plaintiff's allegations and past statements do not conform to one who has a mental impairment.  In addition, the plaintiff never alleged mental retardation in her disability report. [Tr. 504].  The first time the plaintiff's argument of mental retardation was raised was by her attorney at the hearing.  The plaintiff did testify however that she cannot work because of her panic attacks and the pain in her back and legs. [Tr. 462]. The plaintiff was asked why she had left her past employment and she testified that she left because of back pain and because one of the other jobs went out of business. [Tr. 491-92].  The ALJ was unable to find any credibility with the plaintiff about her alleged mental impairment because she did not raise her alleged mental impairment in her disability reports and her reasons for leaving prior jobs and not currently working are not related to her mental condition.

The medical records indicate that the plaintiff does not have a mental impairment. Joseph J. White, Ph.D.,l indicated that the plaintiff's IQ was in the borderline to low average range. [Tr. 199).  Norma Henriquez, M.D., stated the plaintiff was "a cooperative female, who was alert and well oriented to time, place and person" [Tr. 245].  She also noted that the plaintiff's "thought processes were organized with no flight of ideas or loose associations.....  There seems to be good insight into her problems, good motivation and good judgement" {Tr. 245].  Dr. Henriquez did not indicate that the plaintiff has a mental impairment.  Dr. Rafael Lopez did not indicate the plaintiff has a mental impairment [Tr. 250-251].  Dr. Gail A. Vincent found that the plaintiff had mild mental retardation, but during even this examination, the plaintiff stated "I just don't work.  My back.  I can't stand for long periods of time".  These statements must be considered

13

relevant in determining whether the plaintiff's alleged mental impairment affects her

ability to work. [Tr. 278].  Dr. Chris Carr, stated that the plaintiff  had  mild  mental

retardation based on a previous report (Dr. Vincent's report), but he also stated:

"Intelligence appears to be in the low average range.  Judgment and insight are fair" [Tr.

347-348].  He also noted that the plaintiff could handle and manage her own benefits. [Tr.

348].  Thus, the medical evidence indicates that the plaintiff does not have a mental

impairment. [10]

The Commissioner notes that *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001)

(in which the claimant's only valid IQ scores included scores at or below 70) is

distinguishable in the instant case.  Relying on Fourth and Eighth Circuit decisions that

held that a person's IQ is presumed to remain stable after the developmental age or that

courts could assume that IQ scores are stable throughout life, absent any evidence of a

change in a claimant's intellectual functioning, *Hodges* found that later IQ results taken

during adulthood (after age twenty-two) created a rebuttable presumption that the

intellectual deficits existed for life.  *Id*. at 1268.  The court added the caveat that its

"holding adopting a presumption of mental impairment before age 22 does not, however,

shift the burden of proof from a claimant to prove entitlement to social security benefits."

*Id. At 1269.*  Even if this Court should believe that the ALJ in this case improperly found

---

[10]     Dr. Vincent's statement that plaintiff has mild mental retardation
         and Dr. Carr's affirmance do not mandate a finding of mental
         retardation.  As fact-finder, the ALJ was entitled to weight this
         evidence and the other evidence as she did.  *Wheeler v. Heckler*,
         784 F.2d 1073, 1075 (11th Cir. 1986) (stating that the weighing of
         evidence is a function of the fact-finder, not the district court); 20
         C.F.R. §§ 416.927(e)(2), 416.945, 416.946.

the IQ scores invalid, which the Commissioner asserts she did not find, [11] she more than

rebutted any presumption.  ALJs are not required to cite to particular regulations or cases

or to use particular phrases or formulations as long as the court can determine what

statutory and regulatory requirements the ALJ did in fact apply.  *Jamison v. Bowen*, 814

F.2d 585, 588-589 (11th Cir. 1987).  The ALJ in this case was quite articulate in her

reasons for not finding the plaintiff mentally retarded, and met every presumption that

was raised.

Plaintiff at all times had the ultimate burden of proving that she was disabled.

*Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th cir. 1991).  The Commissioner is charged

with the duty to weight the evidence, resolve material conflicts in testimony, and

determine the case accordingly.  *Wheeler v. Heckler*, 784 F.2d 1083, 1075 (11th Cir.

1986); *Watson v. Heckler* 738 F.2d 1169, 1172 (11th Cir. 1984).  Even if this Court

disagrees with the ALLJ's resolution of the factual issues and would resolve those

disputed factual issues differently, her decision must be affirmed where, as here, it is

supported by substantial evidence in the record as a whole.  *Martin*, 894 F.2d at 1529,

*Baker o/b/o Baker*, 880 F.2d at 321.

### III.  Conclusion

For the foregoing reasons, the ALJ's decision is consistent with the requirements

of law and is supported by substantial evidence.

---

[11]     The ALJ said the EQ score was valid. [Tr. 14].  However, as
previously argued, a valid score alone does not mean that an
individual is disabled under list 12.05C absent the requisite
evidence of a physical or mental impairment deficits of adaptive
functioning.

**Therefore**,

The decision of the Commissioner is **AFFIRMED**  pursuant to sentence four of

42 U.S.C. § 405(g) and the Clerk of Court is directed to enter judgment consistent with

this opinion and, thereafter to close the file.

**DONE AND ENTERED** at Fort Myers, Florida, this day of  20th March

2008.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Susan Roark Waldron, A.U.S.A.
Counsel of Record

16